UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NERSES TASHCHYAN,<br><br>    Petitioner,<br><br>    v.<br><br>J. LIZARRAGA, Warden,<br><br>    Respondent. | Case No.: 1:18-cv-01242-DAD-JLT (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[TWENTY-ONE DAY OBJECTION DEADLINE]** |

Petitioner is serving a sentence of fifty years to life for first degree murder. He filed the instant habeas action challenging the conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED.**

I.    **PROCEDURAL HISTORY**

On May 20, 2014, a Fresno County jury found Petitioner guilty of first degree murder (Cal. Penal Code § 187(a)). People v. Taschyan, No. F069692, 2017 WL 3474052 (Cal. Ct. App. Aug. 14, 2017). The court sentenced him to fifty years to life in prison.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). On August 14, 2017, the Fifth DCA affirmed the judgment. Id. Petitioner filed a petition for review in the California Supreme Court, and the petition was denied. (LD 32, 33.[1])

---

[1] "LD" refers to the documents lodged by Respondent.

1

Petitioner next filed a petition for writ of habeas corpus in the Fifth DCA. (LD 34.) The court denied the petition "without prejudice" because Petitioner had "failed to show that he exhausted his remedy of filing a petition for writ of habeas corpus in the superior court." (LD 35.) He filed another habeas petition in the California Supreme Court on October 15, 2018, and that petition was denied on March 13, 2019. (LD 36, 37.)

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[2]:

> The facts of the underlying crime are not heavily disputed and, as the issues in this case are procedural, are generally recounted for context. On or around September 7, 2008, police responded to the home of Albert and Kristina Taschian, where they found Souren Avetisian dead on the floor from gunshot wounds. Albert Taschian is appellant's son and Kristina Taschian is Avetisian's daughter. Avetisian had been babysitting the Taschian's children that evening.
>
> A trail of blood led from the Taschian's home to appellant's home across the street. When contacted, appellant had a wound to his finger and blood splatter on his pants. He ultimately admitted to shooting Avetisian and provided differing reasons why, including being too drunk to recall and because of a struggle over the gun. Appellant also claimed to suffer from mental impairments, including dementia, resulting from a past head injury.
>
> Relevant to the claims before us, Fresno County Public Defender James Lambe represented appellant at his first trial, which resulted in a hung jury on May 24, 2012. In that matter, the jury allegedly came to an 11 to 1 stalemate in favor of a guilty verdict. On August 9, 2012, prior to appellant's scheduled retrial, appellant made a motion to have his counsel replaced. Appellant complained at the time that he wanted an earlier trial date than his counsel was proposing. The court and Lambe identified an earlier date which appellant accepted and the motion was denied. That date was later extended and, on April 22, 2013, appellant again requested a chance to discuss his concerns with counsel. At his hearing, appellant argued Lambe was refusing to introduce certain medical records appellant believed would be helpful to his case. Lambe explained the basis for his decision not to introduce the disputed evidence and the trial court denied appellant's purported motion to relieve counsel.
>
> Yet again, on May 16, 2013, appellant requested to have his counsel replaced. At this hearing, appellant complained about excessive delays in scheduling his trial and the failure to introduce the same medical information identified in the prior hearing. Appellant also complained that his counsel had not planned to call several potential witnesses to testify about appellant's relationship with Avetisian and that he had not received certain case documents. Lambe again explained the reasons for his conduct, before raising another point of contention, noting that appellant refused to accept Lambe's statements that the prior jury voted 11 to 1 for conviction. Appellant

---

[2] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

apparently believed the jury voted 11 to 1 for an acquittal, but could not explain why. The trial court again denied appellant's request.

On September 23, 2013, after several additional delays relating to trial scheduling and expert issues, the court held another hearing regarding Lambe's representation of appellant. In open court, following confirmation that both sides were ready to proceed to trial, the court asked Lambe if there were "any issues that you want to take up with the court relative to your ability to proceed to trial on behalf of [appellant] at this time?" Lambe responded affirmatively, adding, "There are some *Marsden* [Footnote omitted] issues as we apprised the court in chambers." (Italics added.) The court then closed the courtroom for further proceedings.

In the closed portion of the hearing, the court began by asking Lambe whether there were issues related to competency or trust which could jeopardize appellant's right to effective assistance of counsel. Lambe stated there were and identified recurring issues, such as expert witness testimony, the calling of certain witnesses, and disputes over how the first jury voted, that Lambe stated were still problematic. The trial court then asked appellant whether he wanted a new attorney. Appellant stated, "I want that Mr. Lambe to stay with me" before immediately raising a concern that Lambe had not provided him with certain documents relating to his expert evaluation. The court further questioned appellant as to why he did not relate well to his counsel, to which appellant replied, "Because I don't have the documents, the copies of those documents, that's why I'm getting suspicious." On continued questioning, appellant stated he lacked confidence and trust in Lambe "because he's not giving those to me and this is my right to have those" documents.

The court then asked Lambe if the issues discussed would affect his ability to provide effective assistance of counsel. Lambe expressed concern it would, particularly because appellant "insists on believing that I am lying to him about the direction that the jury was hung in and that he chooses to believe the jury in the first trial was hung 11 to 1 in his favor and, in fact, they were hung 11 to 1 against him. I think that is where I'm at." At this point appellant interjected, stating, "What is the proof? Where is the proof? Let me see the proof. [¶] . . . He never showed me the proof that 11 was against me." The court asked Mr. Lambe to further explain the basis of their allegedly broken relationship, to which Lambe replied, "I think it is more a lack of trust than a lack of competency. There are some competency issues, but there seem[s] to be some very significant trust issues."

At the court's request, Lambe provided a brief recitation of his experience. At the conclusion, appellant interjected, "I know that he's a very good defense attorney." The court then clarified appellant's intent, stating "even recognizing that he's a good defense attorney you're telling me that you really don't have trust or confidence in him." Appellant responded, "Yes, because—because he doesn't show me any documentations or any medical documents or evaluation. I'm scared. It's possible that he doesn't even like me or he doesn't love me."

Based on this colloquy, the court stated its "opinion that it appears that there has been a breakdown in the relationship between attorney and client to the extent that it could jeopardize the defendant's right to effective assistance of counsel" based on "an inability to work with the defendant to present a defense." As such, the court relieved the public defender as the attorney of record and stated new counsel would be appointed.

3

Appellant was subsequently retried with his new counsel and convicted of first degree murder on May 20, 2014.

Taschyan, 2017 WL 3474052, at *1-2.

### III. DISCUSSION

#### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

#### B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Petition

Petitioner raises three claims in his petition: 1) He claims that the trial court abused its discretion by discharging appointed counsel; 2) He alleges that defense counsel rendered ineffective assistance of counsel; and 3) He claims actual innocence.

1. Abuse of Discretion

Petitioner alleges that the trial court abused its discretion by discharging appointed counsel. This claim was also raised on direct appeal and rejected by the Fifth DCA in the last reasoned decision, as follows:

> Appellant also argues the trial court abused its discretion when it removed Lambe as his appointed attorney. Appellant claims the record is insufficient to support the court's decision. We do not agree.
>
> *Standard of Review and Applicable Law*
> "The California Constitution gives a criminal defendant the right to an attorney who must competently represent the defendant. But, as [the California Supreme Court has] often pointed out, the state Constitution does not give an indigent defendant the right to *select* a court-appointed attorney." (*People v. Jones* (2004) 33 Cal.4th 234, 244.) "The *removal* of an indigent defendant's appointed counsel, which occurred here, poses a greater potential threat to the defendant's constitutional right to counsel than does the refusal to *appoint* an attorney requested by the defendant, because the removal interferes with an attorney-client relationship that has already been established." (*Ibid.*) This relationship "involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty." (*Smith v. Superior Court* (1968) 68 Cal.2d 547, 561.)
>
> "A trial court may remove defense counsel, even over defendant's objections, 'in order to eliminate potential conflicts, ensure adequate representation, or prevent substantial impairment of court proceedings ....' [Citation.] On appeal, the trial court's removal of counsel is reviewed for abuse of discretion. ' "A court abuses its discretion when it acts unreasonably under the circumstances of the particular case." ' [Citation.] 'Inherent in the question whether a trial court may disqualify a criminal defense attorney over the defendant's objection is the conflict between the defendant's preference to be represented by that attorney and the court's interest in "ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." ' " (*People v. Richardson* (2008) 43 Cal.4th 959, 995–996.)
>
> *The Trial Court Did Not Abuse Its Discretion*
> Contrary to appellant's arguments, the record provides a sufficient basis for the trial court to exercise its discretion to replace Lambe in order to ensure appellant received adequate representation. While it is true that appellant stated his desire to proceed with Lambe, the history and full colloquy between the court, Lambe, and appellant demonstrates a substantial problem with the attorney-client relationship between Lambe and appellant. On at least three prior occasions, appellant raised concerns about Lambe's representation. Although the court discussed appellant's complaints

> with Lambe in open court, and ultimately found they were not substantial barriers to Lambe's continued representation, the colloquy demonstrates these issues were never resolved. Indeed, the court's questioning demonstrated a broad rift had formed between Lambe and appellant. Appellant's demand for proof regarding the breakdown of the jury's vote in the prior trial, in the face of Lambe's repeated statements concerning the vote tally, supported Lambe's assertion that a breach of trust had arisen in their relationship. Appellant further confirmed a breakdown in the attorney-client relationship and explained the lack of confidence and trust had arisen because appellant had not received certain documents.
>
> Ultimately, however, the court heard a direct concern, raised by Lambe, that the unresolved disputes would affect Lambe's ability to provide effective assistance of counsel. In light of both appellant's and Lambe's statements that a breach of the essential state of trust and confidence required for a proper representation had occurred, the trial court was presented with sufficient evidence to conclude replacing Lambe would be appropriate in this instance. Such a decision is undoubtedly one that must be made sparingly, but in this instance there was sufficient evidence for the trial court to reach its conclusion and, as far as the record reveals, no evidence that appellant would be prejudiced if a competent attorney was selected to replace Lambe. Accordingly, under the circumstances of this case, we conclude the trial court acted reasonably in removing Lambe. There was no abuse of discretion.

Taschyan, 2017 WL 3474052, at *4-5.

a. *Legal Standard*

Generally, issues of state law are not cognizable on federal habeas. Estelle v. McGuire, 502 U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law'") (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").

"[C]riminal defendants are entitled under the Constitution to the assistance of court-appointed counsel if they are unable to employ private counsel. However, the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney. . . . 'The right of a defendant in a criminal case to have the assistance of counsel for his defense . . . may include the right to have counsel appointed by the court . . . discharged or other counsel substituted, if it is shown . . . that failure to do so would substantially impair or deny the right . . . , but the right to such discharge or substitution is not absolute, in the sense that the court is bound to accede to its assertion without a sufficient showing . . . that the right to the assistance of counsel would

be substantially impaired . . . in case the request is not granted, and within these limits there is a field of discretion for the court.'" [Citation.]" People v. Marsden, 2 Cal.3d 118, 123 (1970). *Marsden* established "that the trial court must give the defendant the opportunity to explain the reasons for desiring a new attorney. [Citation.] '[T]he trial court cannot thoughtfully exercise its discretion in this matter without listening to [the defendant's] reasons for requesting a change of attorneys.' [Citation.]" People v. Smith, 6 Cal. 4th 684, 690 (1993).

    b. *Analysis*

Nothing in the applicable standard suggests that a state court judge's exercise of such discretion would give rise to a federal due process violation. Accordingly, this claim does not warrant federal habeas relief. See, e.g., Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir.2006) (habeas petitioner's allegation that state court misapplied state law or "departed from its earlier decisions" does not provide basis for habeas relief); Williams v. Borg, 139 F.3d 737, 740 (9th Cir.1998) (Federal habeas relief is available "only for constitutional violation, not for abuse of discretion.").

Petitioner does not allege that the trial court's discharging appointed counsel violated the U.S. Constitution or a federal law. Instead, Petitioner raises only a state law claim, i.e., an abuse of discretion regarding the application of state laws and regulations, and, generally, issues of state law are not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas").

Even assuming that a federal claim could be stated, it would fail on the merits. The record provides a sufficient basis for the trial court's decision to replace attorney Lambe in order to ensure Petitioner received adequate representation. As the Fifth DCA comprehensively explained, Petitioner raised concerns about Lambe's representation on at least three occasions. The open court discussions regarding Petitioner's complaints about Lambe demonstrated the issues between Lambe and Petitioner, were never resolved. As the Fifth DCA found, a lack of confidence and trust had arisen in their relationship and demonstrated a substantial problem with the attorney-client relationship between

Lambe and Petitioner. Accordingly, the state court's adjudication of this issue was objectively reasonable. Therefore, the claim should be denied.

2. Ineffective Assistance of Counsel

Petitioner alleges that attorney Missirlian, who represented him on retrial, was ineffective and incompetent in the following ways: 1) By failing to present evidence of dementia; 2) By failing to communicate terms of the plea offer; 3) By failing to object regarding petitioner's son's testimony; and 4) By failing to call petitioner's pastor and physician to testify.

Petitioner presented this claim in his habeas petitions in state courts. However, Petitioner failed to raise it to the superior court and the California Supreme Court. This claim is unexhausted and subject to dismissal. Nevertheless, the Court will address the claim since it is not colorable and therefore may be denied. 28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005).

a. *Legal Standard*

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d

1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

    b. *Analysis – Failure to Present Evidence of Dementia*

Petitioner complains that defense counsel should have presented evidence that Petitioner had dementia and organic brain disease to demonstrate he could not form the intent required for first degree murder. Counsel's failure to investigate and raise a mental health defense is insufficient only if the Petitioner can establish that counsel had reason to know that Petitioner's mental health might be impaired. Hoffman v. Arave, 455 F.3d 926, 932 (9th Cir. 2006) (ineffective assistance of counsel claim insufficient without evidence that petitioner told counsel relevant information). Petitioner fails to demonstrate that he made his attorney aware of mental health problems. Even had counsel investigated and found evidence to support a mental health defense, Petitioner failed to demonstrate that there is a reasonable probability that such evidence if introduced would undermine confidence in the outcome of the trial. Petitioner fails to show that counsel erred or that the error resulted in any prejudice. The claim should be rejected.

    c. *Analysis – Failure to Communicate Terms of Plea Offer*

Petitioner contends that attorney Missirlian failed to properly communicate the terms of the

plea offer before retrial, stating that it "would have been less than the first plea offer of 10 years right after the hung jury and much less than the 50 years to life sentence Petitioner received."

This claim is purely speculative, and Petitioner does not support his claim with any evidence. Accordingly, this claim should be dismissed.

### d. *Analysis – Failure to Object Regarding Petitioner's Son's Testimony*

Petitioner claims that, between the first and second trial, his son told the district attorney that he was angry at Petitioner and lied at the first trial when he testified that ill will existed between Petitioner and the victim. Petitioner further claims that the district attorney intimidated Petitioner's son into keeping his testimony the same for the second trial, and Petitioner communicated this to his counsel. Petitioner argues that his counsel provided ineffective assistance by failing to object to his son's testimony as perjury, when Petitioner had informed his counsel of his son's wish to change his testimony. Once again, Petitioner does not support his claim with any evidence. Petitioner does not have personal knowledge of the factual premises regarding communications between Petitioner's son and the district attorney. Additionally, it is entirely speculative that any objections by counsel would be futile. Therefore, this claim should be dismissed for failure to state a colorable claim for relief.

### e. *Analysis – Failure to Call Petitioner's Pastor and Physician to Testify*

Petitioner contends that trial counsel should have called his pastor and physician to testify that no animosity existed between him and the victim. Petitioner makes no showing that this evidence would have provided helpful testimony for the defense or how the testimony would have altered the outcome of the trial. The claim is purely speculative and should be dismissed.

### 3. Actual Innocence

Petitioner contends that he is actually innocent because his organic brain disease made it impossible for him to form the required mens rea for first degree murder. He presented this claim in his habeas petitions in state courts. However, Petitioner failed to raise it to the superior court and the California Supreme Court. Like the previous claim, this claim is unexhausted. 28 U.S.C. § 2254(b)(2).

In any event, neither the Supreme Court nor the Ninth Circuit has "resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013); Jones v. Taylor, 763 F.3d 1242, 1246 (9th Cir. 2014). Even

assuming such a claim exists, "the standard for establishing a freestanding claim of actual innocence is "'extraordinarily high' and . . . the showing [for a successful claim] would have to be 'truly persuasive.'" Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir.1997) (quoting Herrera v. Collins, 506 U.S. 390, 417 (1993)). The Supreme Court has held that, at a minimum, the petitioner must "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." Id. (citing Herrera, 506 U.S. at 442-44 (Blackmun, J., dissenting)). In determining whether a petitioner can make such a showing, the Supreme Court has referenced the Schlup "gateway" showing, which permits a petitioner to proceed on a procedurally barred claim by showing actual innocence. Schlup v. Delo, 513 U.S. 298 (1995); see, e.g., Carriger, 132 F.3d at 477. In order to pass through the Schlup actual innocence gateway, a petitioner must demonstrate that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House v Bell, 547 U.S. 518, 537 (2006) (quoting Schlup, 513 U.S. at 327).

Petitioner fails to meet his burden of demonstrating actual innocence. He argues that his organic brain disease made it impossible for him to form the required mens rea for first degree murder, and he does not support this argument with any evidence. Thus, he fails to make a showing that "in light of new evidence, 'it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt.'" House, 547 U.S. at 537 (quoting Schlup, 513 U.S. at 327). The claim is meritless.

**IV.     RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated: **June 20, 2019**            **/s/ Jennifer L. Thurston**
                                                            UNITED STATES MAGISTRATE JUDGE